Shipping, 1737A1. Thanks. Good morning, your honors. May it please the court. I am George Gaitas, representing PSARA Energy Limited. This case started as a simple, uncomplicated Rule B attachment of an arbitration award in Connecticut. The defense that the Guernsey put up relied on the Connecticut long-arm statute. That long-arm statute is in two parts. Actually, there are two long-arm statutes. This one pertains to defendants who are corporations. And it precludes non-residents of Connecticut from suing foreign corporations in the courts of the state. Here, the debt which was garnished was owed by S.T. Shipping to Space Shipping Limited. This is what we sought to attach. Both of these are foreign corporations, so the debt could not be attached under the statute. So the district court ruled that the debt was not in the district, could not be attached, and this appeal followed. Why is this appeal not moot? It is not moot, your honor, because the payment of an amount of money that was made by S.T. Shipping to Space Shipping Limited was voluntary. It was not compelled by any court. It wasn't restricted by any outstanding order either, right? Your honor, it was not restricted by any outstanding order. However, under the rationale of Republic National Bank of Miami and its progeny, there are several decisions which, and I have cited them, which hold that in an attachment, a maritime attachment or garnishment, or in an in rem case, when there is an appeal, the jurisdiction of the court remains over the rest. It cannot be disposed. But what if the rest is not just removed from the jurisdiction but is destroyed? In other words, if you had a ship or something that was attached and it's removed from the jurisdiction, there's precedent saying that does not deprive an appellate court of jurisdiction to decide whether the vacatur of the attachment was proper or not. But what if the ship sinks? What if it's sunk out of spite by the debtor but it just doesn't exist anymore? What happens then? Then we come within the orbit of the useless judgment rule. I realize that I think you've said in your brief, and it's certainly an argument available to you, that no court has applied that doctrine in the case of an intangible, but I'm wondering why not, and I'm not sure that any court has ever said it doesn't apply in the case of an intangible. Why isn't it the same thing? Once the debt is paid, there ain't no debt anymore to be attached. Because the useless judgment doctrine that comes in Republic National Bank, it is referenced to a decision by Chief Justice Marshall, the little Charles, and a judgment, according to Republic, a judgment is not useless if it will have any effect whatsoever. And in the case of the ship that you mentioned that is sunk by her owner, that is removed clandestinely from the jurisdiction, there is somebody who is liable if he loses custody. That's the Marshall. In the case of an intangible, there is somebody who is liable if, on the face of the appeal, he goes and settles his case because the judgment of the court has effect. Well, they didn't just settle the case, right? They effectively interpleaded the funds and said to a court, you decide who owes who to what. They did, Your Honor, but this did not really settle the issue here in this country, which was whether the property was within the jurisdiction of the court. And the property was within the jurisdiction of the court. This is the issue here under appeal. And what you're arguing essentially is that whether we get the attachment and it stands or whether it's vacated or, as in this case, whether the Second Circuit denies an interim stay of the vacature of the attachment, we still get to proceed as if the attachment is still valid until I don't really know when, until the denial of certiorari if we affirm the order here? It behooves the garnishee or defendant, if he has the property, intangible property, during the pendency of the appeal to do nothing, to deposit it in an escrow account in the United States. The court, which had jurisdiction, can hold it and, in the end, sort out, after the appeal, sort out the issues. And that will be of benefit both to the defendant and to the garnishee and everyone else. But the appeal, once it is filed, is not in need of a supersedious or a stay. That's what Republic holds, and that's its progeny, all of the cases that I have seen from the Ninth Circuit, from the Fourth Circuit, from the Eleventh Circuit, they follow this rule. If you have nothing else? On the principal issue, that, of course, it was erroneous. This is why we came where we are, because the statute, the long-arm statute, operates as a door-closing statute. So is there anything else on the mootness issue? Not on the mootness issue. All right. Well, you have three minutes for rebuttal. We'll hear from your adversaries and see what you've got to say after that. Your Honors, good morning. I'm Peter Bemke on behalf of the third-party garnishee, S.T. Shipping. Your Honors, I think from the questioning that I heard to Mr. Gaitis that the panel has really honed in on the issue here, which is that this appeal is moot. What the appellant is asking this court to do is to rule that my client can be forced to pay this debt again, to pay it a second time, as if we had paid it the first time in violation of an existing order of garnishment. And that's not what happened here. The district court vacated the order. This court, as well as the district court, denied the appellant's request that the vacated order be stayed. And then we went to the high court in England in an interpleader action. They call it a stakeholder proceeding there, but it's essentially the same. We deposited the funds into escrow. The appellant presented its arguments to the high court that are the exact same arguments that it's presenting here, to the effect that by virtue of the original attachment, even though it had been vacated, that through the appeal, the Second Circuit could order that my client pay the award again, and therefore the high court was without the ability to enter a final judgment as to the disposition of the award. They raised that argument. The high court rejected that argument and ordered that my client's payment of the debt would be a full and final discharge of the debt. It's very unusual for a court to opine that its decision will be res judicata as to some other action, right? I mean, generally at least U.S. courts leave that question for the second court and don't presume to decide it for them. Your Honor, the question is for the second court. I think the comments made by the high court in England were in response to our concerns that were raised to the high court that if the decision did not make clear that the payment of the award would result in full and final disposition of the debt, that the appellant would continue to chase us for the debt in the United States, which is, of course, happening anyway, and this court will have to make a decision in that regard. A couple other points that I'd like to make in response to the arguments made. Judge Lynch, I think I heard the question or the suggestion that no court has applied the mootness doctrine to intangible property, and we would direct the court to two Second Circuit decisions that we cited in our brief. The first is the export-import case cited by the Second Circuit that involved the payment of funds, the payment of a debt to a law firm was the issue there, as well as the fidelity case, which involved an ownership interest in bonds that had been sold. So there's no magic to an intangible. It's property just like any other property to the same extent that it can be subject to attachment in the first place. The disposition or the liquidation of that property can result in mootness. But you see the similarity the counsel is drawing, that you can't just sail the ship away and thereby moot the case, and by the same token, you can't just take the debt and pay it into London, he's arguing, and therefore moot the case. I mean, when there's an intentional act to oust the court of jurisdiction, doesn't the court that had original jurisdiction of the case have the continuing jurisdiction to determine whether that was the right decision? Two points on that, Your Honor. So first, there are cases, including the Republic National Bank case, by the way, that explain that a voluntary act by the garnishee can render the case moot. The classic example that's explained in that case is the vessel that stealthily absconds after the attachment order is vacated in the first instance. That is the classic example of application of the useless judgment doctrine. So voluntary versus through a judicial process or being compelled through a judicial process is not a meaningful distinction in this context. I'd also point out, by the way, we did enter into a judicial process in the high court. We didn't care who the money went to. Our only concern was protecting ourselves from double liability. So the money could have gone to SARA, could have gone to space shipping. It really did not matter to us. The ‑‑ apologies. So I think another point to be made with respect to Republic National Bank is that the doctrine there is that removal of the res does not automatically divest the court of jurisdiction. If there are existing causes of action, for example, that could be adjudicated, that's relief that could still be provided by the court even though the res that was the original basis for jurisdiction has left or it's been dissolved or what have you. And so long as the court can issue that kind of relief, then there's a purpose to the suit and the court can adjudicate that claim. And that's the case in all of the cases that are cited in the briefs in which the court found that jurisdiction continued to exist. In the Ninth Circuit cases, for example, cited by SARA, the Incorporated Transport case, there was an alter ego claim that was still left to be adjudicated. So the Ninth Circuit took that up even though the funds had left the jurisdiction. You're saying those were not pure in rem actions. There was actually some personal liability being sought. That's correct, Your Honor. I think they were quasi in rem actions. But the attachment of the property is what vested the court with jurisdiction in the first instance, and the fact that the property was no longer available did not preclude the court from continuing on and adjudicating the claims on the merits. But that's not our situation. We are a third-party garnishee. There are no causes of action. There are no claims being asserted against us. The only purpose of this action was for SARA to try to get control over the debt for purposes of security, but the debt does not exist. If we did have continuing jurisdiction and we had to reach the merits of this, I was a little surprised that nobody in the case cited Schaeffer against Heitner. And I sort of wonder, in contexts that don't involve the Cs, quasi in rem jurisdiction is something of a dead letter in the sense that the Supreme Court said that if this were just a domestic case involving somebody who owned property in a jurisdiction and that's being attached essentially in aid of a personal claim, that can only work if there are minimum contacts sufficient to satisfy international shoe and so on. And I'm wondering, does nobody in the Admiralty Bar worry about that, that maybe this is all a relic that is undermined by a Supreme Court case that's now fairly old? I can't speak for the Maritime Bar. I'm actually not a maritime lawyer, Your Honor. But the Schaeffer case was briefed and discussed at length actually at the district court level. I think for purposes of the appeal, we've actually moved beyond those issues because we're at a point now where, as Mr. Gaida said, there's no dispute that in order for the district court to have jurisdiction over the debt, over the award, the debt had to be within the district. Even if this quasi on rem is perfectly fine, your argument is, but in order for that to work in the case of a debt, of garnishing a debt rather than a piece of real property, for the debt to be present, the underlying defendant, the underlying creditor, would have to be able to sue the debtor, meaning there would have to be in personam jurisdiction over the debtor in this jurisdiction. And your argument is there is not. That is absolutely correct. And as Mr. Gaida conceded in his remarks this morning, the debt could not be attached under the relevant long-arm statute. And, of course, that is a requirement of Rule 4 of the Federal Rules of Civil Procedure, which they cannot satisfy. That is conceded. And I know they make some arguments to the effect that the long-arm statute should be considered a door-closing statute and, therefore, should not apply here. And that's just wrong. In the door-closing cases, the animating concept or the animating principle is that a state law cannot be used to conflict with the subject matter jurisdiction of a federal court in claims involving interstate commerce or federal law. But there's no conflict here. There's no conflict in our case. The Supremacy Clause does not come into effect to say, well, you can't use, you know, there's a conflict between the long-arm statute and any federal law here. Congress has mandated that the federal courts look to state law and the requirements of state law in order to determine whether there's personal jurisdiction. Right, but, you know, one of the things that bothers me, and it may not matter because of the mootness issue, is that if this was a case between two Connecticut companies and S.T. Shipping had only the Connecticut presence that it has, Connecticut law would allow the attachment of the debt over S.T. Shipping. Now, the Schaeffer against Heitner question, you know, I'm not sure I read it as broadly as Judge Lynch is suggesting. Maybe it would be constitutional, maybe it wouldn't. But I found Connecticut cases where, in fact, it was personal jurisdiction in terms of quasi and rem jurisdiction over companies that would not have otherwise been jurisdictionally present within the state. If you can do that, why are we all looking to the long-arm statute instead of the Connecticut attachment statutes? Well, Your Honors, I understand that the attachment was made pursuant to Rule B, and so therefore without reference to Connecticut state statutes. A statute. It doesn't have to be the long-arm statute. It can be the Connecticut attachment statute, for example. It really doesn't matter. No one's briefed it, so I withdraw. The question ultimately is whether the person whose liability is supposed to be reached here, but the creditor of the debt could sue. It's not a question of whether the plaintiff here is a Connecticut corporation or an outsider. The creditor couldn't reach this debt by suing these defendants in Connecticut. And if that can't happen, then it's a little difficult to see how the debt can be attached in Connecticut, at least I would think. Is that what you're saying? That's absolutely correct, Your Honor. And there's no dispute about that governing principle. Yeah, but there's still something a little odd. I think this is why Mr. Gaitis says this is a door-closing statute. This is not the normal sort of situation, in some sense at least, where a state says, we want to extend our jurisdiction here, we don't want to extend our jurisdiction there, for reasons that are like the due process considerations. It's more like, well, we just don't want to be bothered with these foreign corporations coming in here. Well, Your Honor, I would direct the court to this court's decision in the Brown v. Lockheed Martin case, where, quoting Judge Friendly, the court said that a state is free to extend jurisdiction over foreign corporations or not. And to the extent that it wants to do so, it is free to put whatever restrictions on the exercise of that jurisdiction. If it chooses not to, then there is no way that we can say that this debt resides in Connecticut because the creditor could not recover that debt in Connecticut. So it follows that some third party coming in can't attach that debt in Connecticut. That's exactly correct, Your Honor. Thank you. Thank you, Your Honor. Thank you, Mr. Gaitis. You have three minutes. It is a door-closing statute because it puts a qualification, not on the defendant who may be sued, but on the plaintiff who might come and sue, even if the plaintiff seeks to enforce a federal right, such as the Federal Arbitration Act, to collect an award, as was the case here, before we filed and they settled this issue. There had been such a move. There was mention of— But you're not enforcing the award here. What you're doing here is you're trying to attach something in aid of the judgment. The judgment exists. The Federal Arbitration Act is complied with. No one is denying that you have a valid judgment as a result of the arbitration. The question is, where is the property? And this is, granted, a somewhat mystical thing in the case of a debt, but that's the question, right? Is there property of your judgment debtor in Connecticut? Yes, there is, Your Honor. It is the obligation of S.T. Shipping to pay space shipping. And both companies—S.T. Shipping is present in the jurisdiction. It's a foreign company, though. But the would-be plaintiff is a nonresident company. So it is barred from suing to enforce a federal right by state law. And this creates a problem for rule B everywhere. I would briefly also would like to mention that the cases in the case of Mootness, Mr. Bemke mentioned a lot of cases that are not within admiralty jurisdiction, particularly attachment. All of these cases in which he says that once the property leaves, there is no jurisdiction, are from the Foreign Sovereign Immunities Act, all the cases he has cited in this regard. The rule is different. In admiralty attachment, once the court acquires jurisdiction, it does not lose jurisdiction if there is an appeal. It continues through the conclusion of the appeal. In these cases under the Federal Sovereign Immunities Act, once the property is removed— What's your best case for that proposition? For which? For the proposition that in an admiralty case, unlike a Foreign Sovereign Immunities Act case, it's different. There's a different result jurisdictionally. It is, Your Honor, Republic National Bank and a whole lot of cases that I have cited. And they—one operates quasi-in rem or in rem, and the other does not. The basis of jurisdiction in admiralty is, in these cases that we're talking about, Rule B or Rule C is in rem or quasi-in rem. Not so with the Foreign Sovereign Immunities Act. It's a different—the nature of the jurisdiction is different. It is like the attachment, if properly made, sticks like a barnacle and follows the property. Until the Court of Appeals, where the appeal is pending, adjudicates and says there was no right. Okay? All right. Thank you very much. Thank you. We'll reserve the decision.